[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT



No. 95-1856

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO FIGUEROA-ROMERO,

Appellant.



No. 96-1254

UNITED STATES OF AMERICA,

Appellee,

v.

ALFREDO CESPEDES,

Appellant.



No. 96-1255

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE A. RIVERO-CABANAS,

Appellant.





APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge] 



Before

Selya, Circuit Judge, 

Aldrich, Senior Circuit Judge, 

and Lynch, Circuit Judge. 



Julio Figueroa-Romero on brief pro se. 
Antonio Bauza Torres, by appointment of the Court, on brief for 
appellant Alfredo Cespedes.
Jose A. Rivero-Cabanas on brief pro se. 
Philip Urofsky, Attorney, Narcotic & Dangerous Drug Section, 
Department of Justice, John C. Keeney, Acting Assistant Attorney 
General, Theresa M.B. Van Vliet, Chief, and Guillermo Gil, United 
States Attorney, on brief for appellee.



May 21, 1997


Per Curiam. Alfredo Cespedes, Jose Antonio Rivero- 

Cabanas and Julio Figueroa-Romero (collectively "defendants")

pleaded guilty to drug trafficking and firearm counts in

Puerto Rico Federal District Court. Each appeals his firearm

conviction or sentence under 18 U.S.C. 924(c)(1), pursuant

to the Supreme Court's more recent opinion in Bailey v. 

United States, U.S. , 116 S. Ct. 501 (1995). Cespedes 

also appeals the court's calculation of his criminal history

category. We affirm.

I. Background 

The indictments and subsequent pleas were based on

the following facts. Beginning in 1993, the defendants and

several others entered into a conspiracy to smuggle

controlled substances into Puerto Rico. They made several

attempts to import illegal substances; some succeeded, some

did not. Pre-sentence reports indicate that Rivero was the

overall organizer and manager of the conspiracy. Cespedes

managed distribution in Miami while Figueroa managed the

operations based in Puerto Rico.

The defendants' guilty pleas relate to incidents

that occurred in November of 1993. The first incident took

place in mid-November. Cespedes left Miami for Puerto Rico

in order to assist Rivero in taking delivery of 3,000 pounds

of marijuana. On the night of the planned delivery, Figueroa

distributed guns to the other conspirators. The group waited

-3-

at the mouth of the Humacoa river for two nights but the

delivery failed to materialize. They tried again

approximately one week later; however, once again the drugs

eluded their grasp.

Rivero next made arrangements with a Colombian

supplier to deliver cocaine by air drop. The group, again

armed, succeeded in retrieving approximately twenty bales of

cocaine from the ocean before they were intercepted by law

enforcement officials.

In April 1994, the defendants were indicted on ten

drug trafficking and firearm counts. One year later, each

defendant pleaded guilty to one count of conspiracy to

possess with intent to distribute cocaine, 21 U.S.C.

841(a)(1), 846, and one count of aiding and abetting the

use and carrying of firearms during the commission of a drug

trafficking crime, 18 U.S.C. 924(c)(1).

II. Discussion 

18 U.S.C. 924(c)(1) imposes a mandatory five-year

prison term on any person who "during and in relation to any

crime of violence or drug trafficking crime . . . uses or

carries a firearm." After the defendants were sentenced but

prior to this appeal, the Supreme Court held in Bailey that 

the word "use" was to be given its "ordinary or natural

meaning." 116 S. Ct. at 506. Accordingly, to be convicted

of "use" under the statute, a defendant must have "actively

-4-

employed the firearm during and in relation to the predicate

crime." Id. at 509. The government concedes that none of 

the defendants' actions rise to this level but maintains that

the record contains sufficient facts to support the

convictions under the "carry" prong.

We have said that the Bailey Court recognized that 

the "carry" prong of 924(c) would take on added importance

in light of the new limitations on "use." United States v. 

Ramirez-Ferrer, 82 F.3d 1149, 1152 (1st Cir.), cert. denied, 

117 S. Ct. 405 (1996). Recently, in United States v. 

Cleveland, 106 F.3d 1056 (1st Cir. 1997), we recognized 

"carry" as applying both to transport in a vehicle and on a

defendant's person. Id. at 1067. We declined to limit this 

reading by adopting a requirement of accessibility, finding

instead that "the distinguishing characteristic of "carry" is

not the instant availability of the item carried, but the

fact that the item is being moved from one place to another

by the carrier. . . . Id. at 1068. This movement, however, 

must have some nexus to the predicate offense. Ramirez- 

Ferrer, 82 F.3d at 1152. Because the firearms charges were 

for aiding and abetting, the convictions will stand "if one

defendant is found to have to have carried a firearm in

violation of 924(c)(1) and the others to have aided and

abetted." Id. We examine each defendant's case in turn. 

-5-

A. Figueroa 

Figueroa pleaded guilty to aiding and abetting the

use or carrying of firearms in connection with the failed

marijuana delivery and the cocaine air drop. He maintains

that he himself did not use or carry any firearms and

objected to the section of his Pre-Sentence Report ("PSR")

stating that he possessed and distributed firearms to the co-

conspirators. When Figueroa voiced this objection at his

sentencing, the court ordered the government to make an offer

of proof in support of its allegations that Figueroa

"facilitated" and "distributed" firearms to the co-

conspirators. The government informed the court that five

co-conspirators were ready to testify that they received

weapons from Figueroa during the unsuccessful attempt to

import marijuana and during the cocaine drop. Figueroa

responded that he would have impeached these witnesses'

testimony by his own testimony and that of Rivera. The court

found by a preponderance of the evidence that Figueroa

facilitated and distributed the weapons to the co-

conspirators on the two relevant occasions.

This finding is enough to support carrying within

the meaning of 924(c)(1) and under Cleveland. In order to 

bring and distribute firearms to his co-conspirators,

Figueroa would have had to transport them either in a vehicle

or on his person. Either is enough to fulfill the

-6-

requirements of carrying as in this context, the required

nexus to the predicate offense is unquestionably present.

Figueroa, however, did not plead guilty to

"carrying", but to aiding and abetting carrying, requiring

that at least one other defendant carry a firearm. This

requirement, however, is easily met. In his written

objections to the PSR, Figueroa acknowledged that he had

"pleaded guilty to participating in an illegal drug

distribution scheme knowing (as an aider and abettor) that

another co-conspirator(s) carried firearm(s) during the said 

distribution. . . ." (emphasis in original).1 The evidence

is sufficient to support Figueroa's guilty plea to the aiding

and abetting of carrying under 924(c)(1).

B. Rivero 

Rivero, like the other defendants, pleaded guilty

to aiding and abetting the use or carrying of firearms.

Because we have found that Figueroa carried firearms within

the meaning of 924(c)(1), Rivero's admitted status as

Figueroa's co-conspirator in the drug trafficking offense is

sufficient to uphold his guilty plea to the firearms count

under Ramirez-Ferrer. Moreover, Rivero did not object to the 

section in his PSR that stated that Figueroa brought,

 

1. We also note that all three defendants at their change of
plea hearings agreed with the government's version of the
facts which stated that during the commission of the two drug
trafficking offenses "the co-conspirators carried firearms."

-7-

distributed and hence, carried the firearms during the

commission of a drug trafficking offense.

Rivero also maintains that he should be allowed to

withdraw his guilty plea because the court gave an imprecise

definition of "aiding and abetting" when it accepted his

plea. During the Rule 11 hearing the following colloquy

ensued:

THE COURT: The charge is aiding and
abetting, which means if there is a group
of persons that are in common consort
carrying out an activity and one or more
has weapons while the illegal activity is
going on, if you are aiding and abetting
in the importation of cocaine and persons
are using weapons and you are charged as
an aider or abettor in the possession of
those firearms. You may not have had
them personally on your person but if
there were others that had them, then you
could be charged as an aider and abettor
and that is what you are charged with in
Count 6.

THE DEFENDANT: Yes, sir.

THE COURT: And that is what you are
pleading guilty to.

THE DEFENDANT: Yes, sir.

We fail to see, and Rivero has not explained, what was

lacking in this explanation. Based on Figueroa's carrying of

firearms we find that the evidence is sufficient to support

Rivero's aiding and abetting the carrying of firearms.2

 

2. Rivero also complains that the court erred by using pre-
Bailey law in its explanation of the firearms charge, 
rendering the guilty plea non-knowing and voluntary. As we
explained, ante, however, Rivero accepted the government's 

-8-

C. Cespedes 

Unlike the other two defendants, Cespedes does not

seek to overturn his guilty plea to the firearms charge.

Instead, he contests the imposition of the five-year

consecutive sentence required under 924(c), arguing for a

concurrent sentence under U.S.S.G. 5G1.2(c).3 Although,

strictly speaking, appeals to "correct a sentence" are more

properly pursued via a habeas petition under 28 U.S.C.

2255, Cespedes' arguments touch on the validity of the

conviction, making review appropriate in this forum.

Cespedes contends "the elements of carrying or use

were not present in relation to the Count One crime." We

dispose of this assertion in short order. Cespedes' PSR

stated that during the earlier unsuccessful attempt to import

marijuana "Mr. Figueroa distributed several firearms among

the co-conspirators" and that Cespedes, among others, "while

in possession of firearms, waited at the mouth of the Humacao

River . . . ." Cespedes did not object to this section of

 

contention that Figueroa facilitated and distributed the
firearms, negating any possible claim of ignorance or
involuntariness.

3. Section 5G1.2(c) states:

If the sentence imposed on the count
carrying the highest statutory maximum is
adequate to achieve the total punishment,
then the sentences on all counts shall
run concurrently, except to the extent
otherwise required by law.

-9-

the PSR. Given that we have already found that Figueroa's

behavior meets the standard for carrying within the meaning

of 924(c)(1), we see no reason to reverse Cespedes'

sentence on this basis.

Cespedes also claims that the court erred in

including in his criminal history category computation an

earlier withheld adjudication ending in a plea of nolo

contendere. There are two prongs to his attack. First, he

argues that a plea of nolo contendere can not be equated with

a guilty plea for the purposes of the sentencing guidelines.

We addressed this issue in United States v. Pierce, 60 F.3d 

886 (1st Cir. 1995), cert. denied, 116 S. Ct. 2580 (1996), 

where we concluded that an event which establishes guilt,

whether "by guilty plea, trial, or by plea of nolo

contendere," is includable in a defendant's criminal history

computation. Id. at 892. 

Cespedes' second argument is that the court should

have allowed him to attack collaterally this same state

charge because he was appointed counsel only at the "instant"

he made the nolo contendere plea. For support he relies on

Custis v. United States, 511 U.S. 485 (1994), which held that 

a collateral attack on a prior state conviction at a federal

sentencing proceeding can be had only if the defendant can

claim total absence of counsel in violation of the Sixth

Amendment. Id. at 496. Such was not the case here. 

-10-

Cespedes acknowledges that he had counsel when he gave the

plea of nolo contendere. That it was, perhaps, not effective

counsel because of the timing, is an argument to be made in a

habeas petition pursuant to 28 U.S.C. 2255.

The convictions and sentences of the defendants are 

affirmed. 

-11-